UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SUSAN VOGEL,

               Plaintiff,         **MEMORANDUM AND ORDER**
                                                  12-CV-3111 (FB)

   -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.
------------------------------------------------------------x

*Appearances:*                                       *For the Defendant:*
*For the Plaintiff:*                             LORETTA E. LYNCH, ESQ.
CHARLES E. BINDER, ESQ.            United States Attorney
Law Offices of Harry J. Binder and     KATRINA M. LEDERER, ESQ.
Charles E. Binder, P.C.                   Special Assistant United States Attorney
60 East 42nd Street, Suite 520          Eastern District of New York
New York, NY 10165                       271 Cadman Plaza East
                                                      Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Plaintiff Susan Vogel seeks review of the final decision of the Commissioner of Social Security ("Commissioner")[1] that her disability ceased as of February 1, 2009, and is therefore no longer entitled to disability benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings.

        Vogel seeks a remand for calculation of benefits or, alternatively, for further proceedings. She claims that, despite the improvement in her liver condition, she continues to be disabled because of pain in her neck and lower back. She contends that the Administrative

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Colvin as the named defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Law Judge ("ALJ") violated the treating physician rule and failed to evaluate her credibility properly. The Commissioner argues that the Court should affirm the decision that Vogel's disability ceased due to improvement in her liver problems, and that her remaining impairments do not entitle her to disability benefits. For the reasons set forth below, the case is remanded for further proceedings.

I.

**A. Original Disability Determination**

Vogel filed an application for Disability Insurance Benefits ("DIB") on March 25, 2004, alleging disability from cirrhosis of the liver, anemia, neuropathy, and arthritis. The medical evidence supplied in connection with her application documented a history of two decades of alcohol abuse, multi-day hospital admissions in August 2002 and September 2003, and various diagnoses including alcoholic neuropathy, pernicious anemia, and cirrhosis of the liver with ascites.[2] Vogel also alleged pain in her legs, hands, and back. On April 30, 2004, Dr. Ahmed Mohamed, a state examining doctor, completed a questionnaire in which he provided an opinion that Vogel could lift and carry a maximum of 5 pounds, stand/walk for up to 2 hours per day, sit for less than 6 hours per day, and that she was unable to push or pull.

In a decision dated May 25, 2004, the Social Security Administration ("SSA") found that Vogel was disabled with an onset date of September 1, 2003. The SSA decision was based on the finding that Vogel's chronic liver disease met Section 5.05D of the Listing of

---

[2]Ascites is "the build up of fluid in the space between the tissues lining the abdomen and abdominal organs." http://www.nlm.nih.gov/medlineplus/ency/article/000286.htm. Long-term alcohol abuse can lead to ascites. *See id.*

2

Impairments. The finding did not rely on arthritis or Vogel's reports of pain. Because the SSA determined that Vogel suffered from a listed impairment at step 3 of the familiar five-step process set forth in the Social Security Regulations, *see* 20 C.F.R. § 404.1520, it did not evaluate Vogel's residual functional capacity ("RFC").

**B. Continuing Disability Review and Cessation Determination**

"[C]ontinued entitlement to [DIB] must be reviewed periodically." 20 C.F.R. § 404.1594(a). On February 5, 2009, the SSA determined that Vogel's health had improved and that her disability ceased as of February 2009. The SSA notified Vogel that it would stop making payments after April 2009 (two months following the cessation of disability).

Vogel administratively appealed. At the first step of the appeals process, a Disability Hearing Officer ("DHO") determined that there was medical improvement and that she could work. Following the DHO decision, Vogel requested a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued his decision on August 25, 2010, concluding that Vogel was "not disabled, by reason of medical improvement, since February 1, 2009." AR at 29.[3] The ALJ's opinion recited the five-step process and detailed his findings and conclusions. After finding that Vogel was disabled in 2004 and had not engaged in substantial gainful activity since the onset of her disability, he then found that Vogel did not have a listed impairment and that she had an RFC that allowed her to engage in "light work" as defined in 20 C.F.R. § 404.1567(b).

Vogel timely appealed the ALJ's decision, and the Commissioner's Appeals

---

[3]All citations to "AR" are to the Administrative Record.

Council affirmed the ALJ's decision on April 25, 2012. Vogel timely sought judicial review.

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Before reaching the parties' arguments, the court must first determine whether the Commissioner applied the correct legal standard.  *Tejada v. Apfel,* 167 F.3d 770, 773.

**A.    Regulations Applicable to Continuing Disability Determinations**

Initial disability applications are evaluated in five steps (the "§ 1520 regulations"). Continuing disability reviews are, by contrast, evaluated pursuant to an eight-step procedure set forth in a different section of the regulations (the "§ 1594 regulations").[4] At step 1, the SSA makes a preliminary determination of whether the claimant is engaging in substantial gainful activity.  If she is, benefits will cease.  If she is not, the continuing disability review proceeds to step 2, and from that point forward if the SSA finds at any step that the claimant is disabled, the review will cease and benefits will be continued.  *See* 20 C.F.R. § 404.1594(f).

---

[4]The eight-step evaluation procedure at 20 C.F.R. §§ 404.1594(f)(1)-(8) was revised effective Aug. 24, 2012, into a nine-step procedure.  The change was immaterial for this analysis, because the ninth step was added to clarify the circumstances under which the SSA may skip step 7 (i.e., the determination of whether a claimant can perform past work) and proceed directly to step 8.  The first eight steps remain unchanged from the version in effect in 2010 when the ALJ issued his decision.

At step 2 the SSA determines whether she has a listed impairment. 20 C.F.R. § 404.1594(f)(1)-(2). A finding that a claimant has a listed impairment constitutes a finding of disability. If there is no listed impairment, step 3 requires the SSA to determine whether there has been "medical improvement," and if so, to continue to step 4 to determine whether the medical improvement relates to the claimant's ability to do work. *See* 20 C.F.R. § 404.1594(f)(3)-(4). "Medical improvement" is at the heart of the § 1594 regulations, which treat the concept extensively. *See generally* 20 C.F.R. § 404.1594; *see also* 42 U.S.C. § 423(f).[5] Most pertinent for our analysis, when claimant is receiving benefits because she was found to have a listed impairment, the regulations provide that:

> If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by [a listed impairment], an assessment of your residual functional capacity would not have been made. If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.

20 C.F.R. § 404.1594(c)(3)(i).

Thus, if a claimant no longer has a condition that previously qualified as a listed impairment, the § 1594 regulations provide answers for steps 3 and 4: it will be deemed that there was medical improvement and that it related to the claimant's ability to do work. This scenario allows the SSA to skip step 5, where exceptions are considered in cases where there has not been medical improvement. *See* 20 C.F.R. § 404.1594(f)(5)

Even if the SSA finds that the medical improvement is related to the claimant's

---

[5] In the 1984 Social Security Reform Act, PL 98-460, Congress expressly provided that the standard of review for termination of disability benefits is the "medical improvement standard." 42 U.S.C. § 423(f).

ability to do work, it must continue through the remaining steps of the evaluation. At step 6, the SSA must "determine whether all [the claimant's] current impairments in combination are severe." 20 C.F.R. §§ 404.1594(f)(6). If they are, then step 7 requires a determination of whether the claimant can perform her past work. Finally, if the claimant cannot perform her past work, the SSA must show at step 8 that the claimant is capable of performing other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1594(f)(6)-(8) and 404.1560 (2010).

**B.      Consequences of Misapplication of the §1520 Regulations**

In this case, the ALJ applied the § 1520 regulations which, by their express terms, do not apply: "If you are already receiving disability benefits, we will use a different sequential evaluation process to decide whether you continue to be disabled." 20 C.F.R. § 404.1520(a)(5). The question is whether this mattered.

This specific situation is relatively uncommon, and the Court will follow the functional approach that others have taken by looking to determine whether the ALJ's decision, despite the error, makes the findings that are required in a medical improvement analysis. *See, e.g., O'Connor v. Astrue*, 2009 WL 3273887 (W.D.N.Y. 2009) (explaining its review of an ALJ's decision that also failed to apply the medical improvement standard).

It is uncontested by the parties that in February 2009, Vogel no longer had liver disease of such severity that her condition met a listed impairment. Thus, the § 1594 regulations deem that there was medical improvement and that it related to her ability to do work. 20 C.F.R. § 404.1594(c)(1). The ALJ could have then skipped Step Five, and moved to the last three steps. *See* 20 C.F.R. § 404.1594(c)(1), (f)(5). These last steps are paralleled in the more common

five-step procedure, and therefore the Court finds that the ALJ performed the analysis that would have been required in the final steps of the § 1594 regulations after finding that Vogel no longer qualified as having a listed impairment.

## C.    The Treating Physician Rule

Vogel contends that the ALJ violated the treating physician rule by failing to give proper weight to the opinions of two of the plaintiff's doctors, Dr. Famulare and Dr. Goldman. Under the rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).  Dr. Famulare diagnosed Vogel as having a variety of impairments, including herniated disks and arthritis, while Dr. Goldman diagnosed her as having degenerative joint disease of the cervical and lumbar spines and lumbar spinal stenosis. The ALJ declined to give either opinion controlling weight, finding that MRI scans did not show herniations — only disc bulges — and further that Dr. Goldman's opinions were contradicted by substantial evidence and not those of a treating physician. The Court concludes that the ALJ violated the treating physician rule because (1) he discredited the findings of a medical source's conclusion that is supported by other evidence without giving good reasons for doing so, and (2) the ALJ failed to develop the record to answer the question of whether Dr. Goldman was a treating physician.

A treating physician's opinion as to the nature and severity of a claimant's impairment is controlling only if it is "well supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also* 416.927(c)(2) (same). If an ALJ refuses to give controlling weight to a treating source, she must consider certain factors in deciding how much weight to give, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Dr. Famulare's questionnaire reported that Vogel was experiencing pain in her neck and lower back that radiated to other parts of her body. He described her pain as constant and moderately severe. Dr. Famulare also reported that Vogel could sit up to a maximum of 3 hours per day, stand or walk up to 1 hour, and that it would be medically necessary for her not to sit continuously or to stand/walk continuously in a work setting. The ALJ discredited the doctor's testimony and provided minimal reasons for doing so. Although the MRI scans, which the ALJ said showed only disc bulging, were the basis for rejecting Dr. Famulare's diagnosis, the ALJ failed to reconcile that with the diagnosis of another doctor, Dr. Jerome Caiti, who performed a consultative internal medicine examination in January 2009 at the request of the SSA. Dr. Caiti — whose reports the ALJ credited — also diagnosed "cervical herniated disks" and "lumbosacral herniated disks" after the examination, and despite the apparent agreement between the doctors, the ALJ did not address why one was accepted and the other

8

was not. Instead, the ALJ and the Appeals Council focused only on those findings of Dr. Caiti that contradicted Dr. Famulare while ignoring their areas of agreement. This was improper because the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 285-86 (E.D.N.Y. 1995).

Meanwhile, the ALJ dismissed Dr. Goldman's opinions for two reasons. First, he relied heavily on Vogel's testimony that she could drive a car as evidence that contradicted Dr. Goldman's reports that Vogel has difficult looking up or turning her head. Second, the ALJ determined, in a conclusory fashion, that Dr. Goldman was not a treating physician. AR at 27. The first issue — that Vogel testified to driving daily — indeed raises questions about how extensively her neck pain limits her. This alone, however, is not sufficient to discredit Dr. Goldman's opinions in their entirety. The more important question is whether Dr. Goldman was a treating physician. It is well-established that the ALJ has "an affirmative obligation to develop the administrative record," *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). The ALJ failed to take steps to clarify Dr. Goldman's role in treating Vogel. The record shows that the Appeals Council recognized the deficiency and attempted to provide a more detailed explanation. Despite that attempt, the Appeals Council ultimately discounted Dr. Goldman's role without taking the minimal additional step of following up on the doctor's May 4, 2010, letter to clear up any ambiguity about his role, including whether he was the source of two additional unsigned treatment notes that were submitted by Vogel with her appeal. Thus, the Appeals Council also failed to develop the administrative record to fill in any gaps as required. *See Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999) (discussing a line of Second Circuit and E.D.N.Y cases that identify the affirmative duty to develop the record).

9

Finally, Vogel contends that the ALJ improperly discredited her statements about her symptoms and limitations. To evaluate credibility, an ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, and second, evaluate the intensity, persistence, and limiting effects of those symptoms. *See* 20 C.F.R. § 404.1529(b)-(c). The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7. The ALJ may not discredit subjective complaints solely due to a lack of objective support. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

The ALJ failed to address any of the seven factors that must be considered when a claimant's subjective complaints suggest greater severity than can be shown solely by objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(3). For example, he dismissed Vogel's complaints by saying there was "no evidence of disc herniation or fracture," AR at 28, but failed to address that she had still been receiving pain medication. Furthermore, aside from driving a car, no additional evidence contradicted Vogel's reports of her limitations and symptoms related to her back pain. While the ALJ and the Appeals Council both focused heavily on her liver improvement, they were required to take into account all current impairments — and not only the lack of the listed impairment — to "establish that [the claimant] can currently engage in gainful activity before finding that [her] disability has ended." 20 C.F.R. § 404.1594(c)(1). Moreover, the ALJ also failed to explain how Vogel's ability to perform the limited daily activities that she testified to doing indicates that she is able to work; instead, he merely asserted that, "the claimant's activities of daily living . . . are consistent with the conclusion that she can perform sedentary and light work." Thus, the ALJ impermissibly substituted his view

10

of the evidence since at least two doctors found that Vogel suffers from severe functional limitations that would likely prevent her from working. *See Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000).

Finally, because the ALJ discounted the opinions of two physicians without providing necessary analysis, the ALJ must also reconsider her credibility. The ALJ found Vogel's complaints not credible to the extent they were inconsistent with the RFC determination. But once the ALJ reconsiders the medical evidence and obtains additional information as needed, it may support her complaints.

### III

As the Court cannot say that "application of the correct legal standard could lead to only one conclusion, "further proceedings are appropriate." *Schaal v. Apfel*, 134 F.3d 497, 504 (2d Cir. 1998). The ALJ erred by rejecting medical opinions without providing good reasons and failing to explain why corroborating evidence from a consulting physician was ignored. Further, the ALJ's failure to seek clarification on the crucial issue of whether Dr. Goldman was a treating physician renders the record incomplete. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration.").

### IV

For the foregoing reasons, Vogel's motion is granted and the case is remanded for further proceedings. The Commissioner's cross-motion is denied.

**SO ORDERED.**

/s/ Frederic Block

11

                                                  FREDERIC BLOCK  
                                                  Senior United States District Judge

Brooklyn, New York  
October 9, 2013